UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NAKIA SPROUSE, individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCE FUNDS NETWORK LLC, a New York limited liability company,<br><br>Defendant. | )<br>)<br>)<br>) Civil Action No.<br>)<br>) **CLASS ACTION**<br>)<br>)<br>)<br>)<br>)<br>) |

# CLASS ACTION COMPLAINT

Plaintiff, NAKIA SPROUSE ("Plaintiff"), through her attorneys, brings this action on behalf of herself and all others similarly situated, and alleges the following against Defendant, ADVANCE FUNDS NETWORK LLC INC. ("Defendant") based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after an opportunity for class discovery:

## NATURE OF ACTION

1. Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Advance Funds Network LLC in sending unsolicited and unauthorized SMS or MMS text messages, *en masse,* to Plaintiff's cellular device and the cellular devices of numerous other individuals across the country, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Personal jurisdiction and venue are proper in this district because Plaintiff resides in this district and Plaintiff's claims arose in substantial part in this district. Defendant directed the text messages received by Plaintiff into this district by transmitting the messages to a telephone number that is assigned an area code (219) corresponding to a location in this district. Plaintiff received Defendant's unsolicited text messages on her cellular device while present in this district.

## PARTIES

4. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Indiana.

5. Defendant, ADVANCE FUNDS NETWORK LLC Inc., is a New York limited liability company with its principal place of business in Brooklyn, New York.

## TELEPHONE CONSUMER PROTECTION ACT OF 1991

6. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, *inter alia,* any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls or text messages that constitute "advertisements" or "telemarketing", as defined by applicable regulations, the TCPA requires the "prior express written consent" of the called party who has been registered on the national do not call registry before initiating such calls or texts using a prerecorded voice or text message.

7. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, prerecorded voice and texts are prohibited because receiving them is a greater nuisance and more invasive than live solicitation calls and they can be costly and inconvenient. The FCC also recognized that wireless

customers are charges for such incoming texts whether they pay in advance of after the texts are used.

8. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to user's cell phones."[1]

9. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. SMS and MMS text messages are received virtually anywhere in the world.

10. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text message or data plan, regardless of whether the message is authorized.

---

[1] Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research, http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American -Adults. Aspx.

3

11. Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion, especially after the number has been listed in the national do not call registry.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

12. Plaintiff is, and at all relevant times was, the subscriber of the cellular telephone number (219) ***-3177 (the "3177 Number"). The 3177 Number is, and at all relevant times was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii). The 3177 Number is, and at all relevant times, was listed on the National Do Not Call Registry List (the "DNC List"), including more than thirty (30) days prior to receiving Defendant's unsolicited text messages.

13. Over a twelve month period of time, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, numerous SMS or MMS text messages to the 3177 Number without Plaintiff's prior express written consent, an example of which is depicted in the screenshots attached as Exhibit A which were extracted from Plaintiff's cellular device. Below is a date summary of the text messages.

>  1-702-329-6486
> 6/23/21
> **STOP**
>
> 1-512-640-7973
> 11/10/21 (2 texts), 11/15/21, 11/16/21, 11/29/21
> **STOP**
>
> 1-818-479-8030
> 12/13/21; 12/20/21; 12/22/21 (2 texts); 1/04/22 (2 texts); 1/21/22
> **STOP**
>
> 1-307-370-2340
> 2/18/22; 2/22/22
> **STOP**

4

<u>1-858-868-7940</u>
3/03/22, 3/07/22 (2 texts)
**STOP**

<u>1-216-412-5861</u>
5/02/22, 5/04/22
**STOP**

<u>1-315-215-0340</u>
6/03/22
**STOP**

14. Plaintiff has on several occasions attempted to put a stop to Defendant's invasive text messages by responding "STOP", to no avail. Plaintiff had texted "STOP" in an attempt to end the onslaught of Defendant's digital junk mail, as shown in the screenshots attached as Exhibit A, also extracted from Plaintiff's cellular device. Although Defendant originally appeared to have complied with Plaintiff's STOP requests, it only changed originating phone numbers to continue to send these unauthorized text messages to Plaintiff.

15. Despite these clear instructions to STOP, Defendant is nonetheless undeterred. Its texts to the 3177 Number persisted. The TCPA was enacted to end this sort of contumacious behavior.

16. The source of the unsolicited text messages that Defendant transmitted to the 3177 number were telephone numbers 702-329-6486, 512-640-7973, 818-479-8030, 307-370-2340, 858-868-7940, 216-412-5861, and 315-215-0340, which on information and belief, are/were telephone numbers leased by Defendant or Defendant's agent(s) or affiliate(s) and used for operating Defendant's text message marketing program.

17. Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever she receives a text message, the unsolicited text messages that Defendant transmitted to Plaintiff's cellular devise were invasive and intruded upon Plaintiff's seclusion upon receipt.

5

Plaintiff became distracted and aggravated as a result of receiving Defendant's unsolicited text messages and wasted her time reviewing and responding with stop communications which went unheeded.

18. The complained of SMS and/or MMS text messages sent by Defendants to the 3177 Number and to the numbers of the Class defined below constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendant sent the messages in order to advertise and market its goods and services, namely its business funding / line of credit options, for the purpose of ultimately selling such goods and services to Plaintiff and other Class members for commercial profit.

19. The unsolicited text messages were sent pursuant to a common telemarketing scheme for which the Defendant, or any agent or intermediary acting on its behalf, did not comply with, and thus violated, the telemarketing and DNC List restrictions of the TCPA and the telephone solicitation restrictions in 47 C.F.R. § 64.1200(c)-(e).

20. Neither Plaintiff nor any members of the proposed Class provided their "prior express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant to permit Defendant to transmit text messages to Plaintiff's 3177 Number or to any of the Class's cellular telephone numbers.

## CLASS ACTION ALLEGATIONS

21. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this class action on behalf of the following Classes:

### Do Not Call Registry ("DNC") Class

All persons whose telephone numbers were listed on the Do Not Call Registry, and to whom, during the four years prior to the filing of this Complaint to the present, received more than one text message, in any 12-month period, promoting the sale of Defendant's

6

>  goods or services sent by or on behalf of Defendant, more than 30 days after registering their telephone number on the National Do-Not-Call Registry.

> **Failure to STOP Class**
>
> All persons who during the four years prior to the filing of this Complaint to the present, received one or more text message(s) promoting the sale of Defendant's goods or service sent by or on behalf of Defendant, after having previously responded "STOP" to one or more such text message(s).

Excluded from the Classes are the Defendant and its members, managers, employees, and agents and members of the Judiciary. Plaintiff reserves the right to amend the class definitions upon completion of class certification discovery.

22. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

23. This Class Action Complaint seeks injunctive relief and monetary damages

24. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

25. Upon application by Plaintiff's counsel for certification of the Classes, the Court may also be requested to utilize and certify subclasses in the interest of manageability, justice, or judicial economy.

26. <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of Class members is at least forty (40). Accordingly,

utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

  27. <u>Commonality (Fed. R. Civ. P. 23 (a)(2)):</u> Common questions of law and fact apply to the claims of all class members defined above and predominate over any questions affecting only individual members of the Classes. These common material questions of fact and law include, but are not limited to, the following:

  a. Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

  b. Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained "prior express written consent" (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

  c. Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted, within a 12-month period, more than one text message to the cellular telephones of Plaintiff and Class members despite such numbers having been registered for more than 30 days on the DNC List;

  d. Whether Defendant affiliates, subsidiaries, or agents of Defendant continued to transmit text messages after Plaintiff and Class members previously responded "STOP" to one or more text messages; and

  e. Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

28. <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>:  Plaintiff's claims are typical of the claims of all Class members. Plaintiff received the same or substantially similar unsolicited text messages as the other Class members sent by or on behalf of Defendant advertising the availability or quality of goods and services of the Defendant during the Class Period. Plaintiff is making the same claims and seeking the same relief for himself and all Class members based upon the same federal statute. Defendant has acted in the same or in a similar manner with respect to the Plaintiff and all the Class members by sending Plaintiff and each member of the Class the same or substantially similar text messages without receiving "prior express written consent" to be sent such message(s).

29. <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>:  Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Classes and will vigorously pursue those claims. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

30. <u>Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))</u>:  Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

   a. Proof of Plaintiff's claims will also prove the claims of the Classes without the need for separate or individualized proceedings;

   b. Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

   c. Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to Plaintiff and all Class members;

      d.     The amount likely to be recovered by individual Class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

      e.     This case is inherently manageable as a class action in that:

        i.     Defendant identified persons or entities to receive the unauthorized text messages and Defendant's computer and business records will likely enable Plaintiff to readily identify class members and establish liability and damages;

        ii.     Liability and damages can be established for Plaintiff and the Class with the same common proofs;

        iii.     Statutory damages are provided for in the statute and are the same for Plaintiff and all Class members and can be calculated in the same or a similar manner;

        iv.     A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

        v.     A class action will contribute to uniformity of decisions concerning Defendant's practices; and

        vi.     As a practical matter, the claims of the Classes are likely to go unaddressed absent class certification.

## COUNT I

### Violation of the TCPA & 47 U.S.C. § 227(b)(1)(A)
**(On behalf of Plaintiff and the Failure to STOP Class Members Against Defendant)**

31.    Plaintiff incorporates by reference the foregoing paragraphs as if fully stated herein.

32. The foregoing acts and omissions constitute violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(b)(1).

33. As a result of Defendant's violations of the TCPA, Plaintiff and all DNC Class and Failure to STOP Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3).

34. As a result of Defendant's violations of the TCPA, Plaintiff and all DNC Class and Failure to STOP Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each violation of the TCPA (or $1,500.00 for any such violations committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

35. Plaintiff and the DNC Class and Failure to STOP Class members also seek an ward of attorneys' fees and costs.

## COUNT II

### Violation of the TCPA, 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)(2)
### (On behalf of Plaintiff and the DNC List Class Members Against Defendant

36. Plaintiff incorporates by reference the foregoing paragraphs as if fully stated herein.

37. Plaintiff and each member of the DNC List Class received, within any 12-month period, more than one text message that promoted the sale of Defendant's goods or services at a time more than 30 days after Plaintiff and each DNC Class member had registered their respective phone numbers with the national Do-Not-Call Registry. Each such text message constituted a telephone solicitation call within the meaning of the TCPA and its implementing regulations. Neither Plaintiff nor any other member of the DNC List Class provided Defendant prior express written consent to receive such text messages.

38. Defendant's transmission of more than one text message solicitation within any 12-month period to Plaintiff's 3177 Number and to each DNC List Class member's cellular telephone number, as set forth above, constituted violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(c)(5) and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1220(c)(2) and 47 C.F.R. § 64.1200(e).

39. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1220(c)(2) and 47 C.F.R. § 64.1200(e), Plaintiff and all DNC List Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to U.S.C. § 227(c)(5)(A).

40. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1220(c)(2) and 47 C.F.R. § 64.1200(e), Plaintiff and all DNC List Class members are also entitled to, and do seek, an award of statutory damages of up to $500.00 (or up to $1,500.00for any willful or knowing violations) for each such violation of the TCPA pursuant to 47 U.S.C. § 277(c)(5)(B).

41. Plaintiff and the DNC List Class members also seek an award of attorneys' fees and costs.

WHEREFORE, Plaintiff, NAKIA SPROUSE, individually and on behalf of all others similarly situated, demands judgment in her favor and against Defendant, ADVANCE FUNDS NETWORK LLC, as follows:

  A. That the Court adjudge and decree that the present case may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23, appoint Plaintiff as the representative of the Class, and appoint the Plaintiff's counsel as counsel for the Class;

  B. That the Court award statutory damages in the sum of five hundred dollars ($500.00) for each violation, and award treble damages if the violations were done willfully and/or knowingly for Plaintiff and each member of the Failure to STOP Class for each of Defendant's violations of 47 U.S.C. § 227(b)(1)(A) pursuant to 47 U.S.C. § 227(b)(3);

  C. That the Court award statutory damages in the sum of five hundred dollars ($500.00) for each violation, and award treble damages if the violations were done willfully and/or knowingly for Plaintiff and each member of the DNC List Class for each of Defendant's violations of 47 U.S.C. § 227(c)(5), and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200(c)(2) and 47 C.F.R. § 64.1200(e), pursuant to 47 U.S.C. § 227(c)(5)(B);

  D. That the Court award injunctive relief prohibiting such violations of the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A) and 47 U.S.C. § 227(c)(5)(A); and

  E. That the Court award attorneys' fees and costs to counsel for Plaintiff and the classes.

           Respectfully submitted,

           NAKIA SPROUSE, individually and as the representative of a class of similarly-situated persons,

           By: /s/ Ryan M. Kelly
           Ryan M. Kelly

>**ANDERSON + WANCA**
>3701 Algonquin Road, Suite 500
>Rolling Meadows, IL 60008
>Telephone: 847-368-1500
>Facsimile:  847-368-1501
>rkelly@andersonwanca.com